THOMAS KERR, Plaintiff, *v.* CONRAIL, Defendant and Third-Party Plaintiff-Appellee.—(CENTER CABS, INC., Third-Party Defendant-Appellant.)

Fifth District    No. 81-297

Opinion filed December 23, 1981.

Burton C. Bernard and William R. Gallagher, both of Bernard, Davidson & Kaseberg, of Granite City, for appellant.

Walker & Williams, P. C., of Belleville (Gordon E. Maag, of counsel), for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Thomas Kerr, brought an action for damages resulting from personal injuries allegedly sustained in an automobile accident which

occurred in Cincinnati, Ohio, against Consolidated Rail Corporation (Conrail) under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1976)). Conrail filed a third-party complaint against Center Cabs, Inc., an Ohio corporation, for indemnity. Center Cabs appeared specially objecting to the jurisdiction of the circuit court of Madison County over its person. From an order denying its objections, Center Cabs appeals pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308). The issues raised on appeal are whether Center Cabs voluntarily submitted to the personal jurisdiction of the circuit court of Madison County and whether section 17(1)(d) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 17) applies to confer jurisdiction over Center Cabs.

Kerr, an employee of defendant and third-party plaintiff, Conrail, filed a one-count complaint alleging that it had violated the F.E.L.A. in that it negligently failed to provide plaintiff with a safe place to work. The complaint alleged that plaintiff was injured while traveling during the course of his employment in Cincinnati, Ohio, in a taxicab provided by Conrail. Another vehicle struck the rear of the taxicab while it was stopped at a red light. The complaint alleged specifically that Conrail violated the F.E.L.A. by failing to provide safe transportation, to provide taxicabs with seatbelts and to warn plaintiff of the alleged dangerous condition.

Conrail filed a third-party complaint against Center Cabs seeking common law and contractual indemnity. In the complaint, defendant stated that it entered into a contract with Center Cabs whereby Center Cabs was to provide transportation services for defendant's employees "within, to and from" its Cincinnati terminal. In the contract, Center Cabs agreed to indemnify Conrail for money paid because of any accidents related to the performance of the contract. Center Cabs was personally served with summons in Ohio.

In the affidavit accompanying Center Cabs' appearance and motion, Gertrude E. Worst, president, stated that Center Cabs is an Ohio corporation with its principal place of business located in Cincinnati, Ohio. Center Cabs is engaged in the taxicab business in the Cincinnati metropolitan area. The affidavit further stated that Center Cabs is licensed by the City of Cincinnati and other surrounding municipalities. Center Cabs is not licensed to do business in the State of Illinois and does not operate any vehicles in Illinois. The affidavit stated that Center Cabs does not have any office, employees or property in Illinois.

In addition, the affidavit stated that Center Cabs executed the contract with defendant at defendant's office located in Cincinnati. Center Cabs was not required by the terms of the contract to transport any of defendant's employees within the State of Illinois. Center Cabs was transporting five of defendant's employees in Cincinnati when the

accident occurred. Finally, the affidavit states that Center Cabs did not consent to be sued in the State of Illinois.

After a hearing on the motion to dismiss, the trial court overruled Center Cabs' objection to jurisdiction, citing *Bania v. Royal Lahaina Hotel* (1975), 37 Ill. App. 3d 661, 347 N.E.2d 106. Center Cabs applied for leave to appeal from the interlocutory order pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308).

The question as certified by the trial court reads as follows:

> "Does the Madison County, Illinois, Circuit Court have jurisdiction over the person of an Ohio corporation which is engaged exclusively in the business of providing taxicab service in the greater Cincinnati, Ohio area, and not in Illinois, if it has been served with summons in Ohio, which summons has been issued by the Clerk of said Circuit Court, pursuant to the filing of a third party complaint against the Ohio corporation, by a railroad, which does business in Ohio and Illinois, seeking indemnity from the Ohio corporation, in a suit for personal injuries brought by the railroad's employee against the railroad in said Circuit Court for injuries received by him in an auto collision in Ohio while a passenger in the Ohio corporation's taxicab, the railroad, prior to the accident, having entered into a contract with said Ohio corporation, a copy of which is attached hereto as Exhibit A, for transporting the railroad's employees within, to and from the railroad's Cincinnati terminal, the contract having been executed by the railroad in Indiana, and by the Ohio corporation in Ohio, and, in force at the time of the accident?"

We find that the circuit court did not have jurisdiction over the person of Center Cabs.

As noted above, the trial court premised its order on *Bania v. Royal Lahaina Hotel* (1975), 37 Ill. App. 3d 661, 347 N.E.2d 106. In *Bania*, the plaintiff, an Illinois resident, appealed from an order of the trial court dismissing the complaint for lack of jurisdiction over the defendant, an Hawaiian hotel. The complaint alleged that plaintiff, while a guest of the hotel, was injured as a result of defendant's negligence. The complaint further alleged that defendant, through its manager, told plaintiff to bring her claim against it under its insurance policy. The court held that the defendant was subject to the jurisdiction of the Illinois court. The court reasoned that defendant had consented to suit in Illinois because the hotel manager told plaintiff to sue its insurance company.

On appeal, Center Cabs argues that *Bania* is distinguishable from the instant case. We agree and note that the factual situation presented in *Bania* was unique. The court in *Bania* focused upon the fact that the defendant, in effect, directed plaintiff to bring suit in plaintiff's State of

residence. No conduct by Center Cabs can be construed as a direction to defendant to bring its counterclaim against Center Cabs in Illinois. Neither can the indemnity provision in the transportation services contract between Center Cabs and defendant serve as a basis for finding that Center Cabs voluntarily submitted to the court's jurisdiction.

■■ Center Cabs agreed to indemnify defendant for money paid because of any accidents related to the performance of the contract. Center Cabs did not agree to assume the defense of any action brought against defendant. Here, defendant argues that Center Cabs consented to the personal jurisdiction of Illinois courts because it knew or should have known that defendant, whom it agreed to indemnify, was a corporation doing business throughout the United States, and, therefore, subject to suit in foreign forums. We disagree. Defendant drafted the contract which was to be performed solely in Ohio by Center Cabs, an Ohio corporation. In the absence of an express contractual understanding that Center Cabs would voluntarily submit to the court's jurisdiction, the indemnity provision cannot be so construed. Therefore, we find that Center Cabs did not consent to the personal jurisdiction of the courts of Illinois.

■■ On appeal, defendant raises the argument that the trial court's finding that Center Cabs was subject to the jurisdiction of the court is supported not only by the consent of Center Cabs, but also by section 17(1)(d) of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 17(1)(d).) Center Cabs argues that section 17(1)(d) of the Civil Practice Act does not apply to the instant factual situation. This issue was not considered by the trial court.

Section 17 of the Civil Practice Act provides, in pertinent part, the following:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

* * *

(d) Contracting to insure any person, property or risk located within this State at the time of contracting; * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 17(1)(d).)

No published opinions by the courts of this State have considered whether the above-cited provision of the Civil Practice Act was designed or intended to apply to cases of the character now before the court. A cardinal rule of statutory construction is that the court must ascertain and give effect to the intent and meaning of the legislature, as evidenced in the

history, circumstances and contemporary conditions of the legislation. (*Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 418 N.E.2d 178.) Of critical importance, therefore, is an examination of the origin of section 17(1)(d) of the Civil Practice Act.

Illinois, like many States, had long been concerned with the difficulty of obtaining service of process over mail-order insurance companies. (See Uniform Unauthorized Insurers Act, 9C Uniform Laws Annotated 303 (1957).) This difficulty was addressed by the legislature in the Illinois Insurance Code which provided that service of process could be obtained over a mail-order insurance company in a suit by an Illinois resident by serving the Director of Insurance and mailing a copy of the process to the company, where the company, by mail or otherwise, (a) issued or delivered policies, (b) solicited applications, (c) collected premiums or (d) transacted any other business. (Ill. Rev. Stat. 1937, ch. 73, par. 735.) In the 1949 amendment of the Code, the legislature in stating the purpose of this provision declared:

"[t]hat it is a subject of concern that many residents of this state hold policies of insurance issued by companies not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." Ill. Rev. Stat. 1949, ch. 73, par. 735.

In the revised Civil Practice Act which went into effect on January 1, 1956, the legislature enacted a comprehensive scheme whereby nonresident defendants became subject to the jurisdiction of Illinois courts by the commission of certain acts. The concern expressed by the legislature in the 1949 amendment to the Insurance Code was continued in section 17(1)(d) of the Civil Practice Act. In addition, section 17(1)(d) was an extension of the Insurance Code provision in that nonresident plaintiffs as well as Illinois residents could utilize the statute where the risk insured by the policy was located within Illinois at the time of contracting. O'Connor and Goff, *Expanded Concepts of State Jurisdiction over Non-residents*, 31 Notre Dame Law. 223 (1956).

The insurance industry has long been recognized as a business subject to specialized regulation by the State. (Accord, *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199.) We are of the opinion that section 17(1)(d) of the Civil Practice Act was intended to facilitate the State's interest in regulating the insurance industry and providing effective remedies against insurance companies that are not amenable to service of process in the absence of a process statute. Therefore, section 17(1)(d) cannot serve as the basis for the court's exercise of jurisdiction over Center Cabs. Center Cabs did not enter into an insurance contract as such is contemplated by section 17(1)(d). Center

Cabs entered into a contract with defendant whereby Center Cabs was to provide transportation services to defendant's employees. Incidental to the service contract was an indemnity provision. Center Cabs agreed to indemnify defendant for money paid as a result of any accidents related to the performance of the contract. We are unable to equate such an indemnification provision to an insurance contract as defendant now urges.

We would note that the supreme court has recently construed section 17 of the Civil Practice Act in *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847. There the court refused to equate "doing business" with the mere satisfaction of the minimum contacts needed to satisfy due process. We likewise refuse to construe this indemnity agreement as a contract to insure under section 17(d) of the Act.

For the foregoing reasons, the order of the circuit court of Madison County is reversed and the cause is remanded.

Reversed and remanded.

KASSERMAN and HARRISON, JJ., concur.